UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Type text here

ERIC JERMAINE HARVEY,

                              Petitioner,                    Case No. 1:22-cv-26

v.                                                            Honorable Robert J. Jonker

FREDEANE ARTIS,

                              Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Eric Jermaine Harvey is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. On May 2, 2017, following a two-day jury trial in the Kent County Circuit Court, Petitioner was convicted of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2). On June 15, 2017, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 15 to 60 years.[1]

On January 7, 2022, Petitioner filed his habeas corpus petition raising five grounds for relief, as follows:

I.    The trial court erred when it failed to direct a verdict of acquittal on the home invasion first degree charge where there was insufficient evidence of intent to allow the charge to the jury, the trial court erred and violated [Petitioner's] right to due process when it failed to charge the jury with

---

[1] The sentence imposed for the home invasion conviction is part of a consecutive string that includes sentences for which Petitioner was on parole at the time he committed the home invasion. Petitioner's earliest release date is June 14, 2032. *See* https://mdocweb.state.mi.us/otis2/ otis2profile.aspx?mdocNumber=486968 (last visited Oct. 17, 2023). Because of the lengthy consecutive string, his maximum discharge date is June 6, 2101. *Id.*

specific intent instructions when the offense and only element at issue both de[a]lt with the specific intent of the crime.

II.    [Petitioner's] right to effective assistance of counsel was violated when trial counsel failed to call corrobo[r]ative witnesses, failed to present evidence that would bolster [Petitioner's] testimony, failed to object to the prosecution's closing argument shifting the burden of proof, and failed to challenge the admission of illegally seized text messages, and failed to request specific intent jury instruction.

III.    The trial court erred when it denied [Petitioner's] request for an instruction [for the lesser included crime of] entering without permission.

IV.    The verdict must be vacated because of prosecutor[i]al misconduct where the prosecution shifted the burden of proof to [Petitioner] during closing argument and misstated the evidence to mislead the jury.

V.    [Petitioner's] Fourth, Sixth, and Fourteenth Amendment rights were violated when he received ineffective assistance of retain[ed], trial and appellate counsel set fo[]rth herein.

(Pet., ECF No. 1, PageID.15, 26.) Respondent contends that Petitioner's grounds for relief are meritless.[2] (ECF No. 13.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

---

[2] Respondent also contends that grounds IV and V are procedurally defaulted. (ECF No. 13, PageID.578–579.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). With regard to the claimed procedural default of habeas ground IV, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims. With regard to habeas ground V, however, the Court will consider Respondent's contention that Petitioner procedurally defaulted the ineffective assistance of counsel claims.

## Discussion

### I.      Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> In the early morning hours of January 4, 2017, a homeowner and his wife, children, and grandchildren heard a noise; and upon investigation, they discovered [Petitioner] halfway inside their home through a broken window in the basement. The homeowner confronted [Petitioner], who claimed he was looking for his phone and then fled the scene. The police were summoned, and they discovered and arrested [Petitioner] nearby. [Petitioner] testified in his own defense, and, consistent with his statements at the scene, admitted to breaking the window and attempting to enter the home, but insisted that he was merely trying to retrieve his cell phone that he had thrown through the window. A cell phone that did not belong to any of the residents in the house was, in fact, found on the floor just inside the broken window. [Petitioner] blamed his conduct on a combination of drunkenness, anger at his phone not working properly, and failing to notice that a window was present in the direction he threw his phone. [Petitioner] denied that he had intent to commit a larceny inside the residence, pointing out that he had money on him. The jury found [Petitioner] guilty.

*People v. Harvey*, No. 339262, 2019 WL 2111967, at *1 (Mich. Ct. App. May 14, 2019).

Jury selection for Petitioner's trial began on May 1, 2017. (Trial Tr. I, ECF No. 14-6.) On the next day, the jury heard testimony from the occupants of the home, law enforcement officers, and Petitioner himself. (Trial Tr. II, ECF No. 14-7.) On May 2, 2017, after only a little over an hour of deliberation, the jury reached a guilty verdict. (*Id.*, PageID.764.) Petitioner appeared before the trial court for sentencing on June 15, 2017. (ECF No. 14-8.)

Subsequently, Petitioner, with the assistance of appellate counsel, filed a motion for a new trial and request for an evidentiary hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). (ECF No. 14-12, PageID.956–972.) The trial court held the *Ginther* hearing on March 2, 2018, at which trial counsel Charles Clapp testified. (ECF No. 14-9.) At the end of the hearing, the trial court orally denied Petitioner's motion for a new trial. (*Id.*, PageID.802–804.)

Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising the following issues: (1) the trial court erred in denying his motion for a directed verdict because the prosecution failed to prove that Petitioner intended to commit a larceny inside the home; (2) the prosecutor committed misconduct by (a) improperly shifting the burden of proof and commenting on Petitioner's failure to corroborate his testimony, (b) misstating the evidence, and (c) making improper statements regarding proof of intent during closing arguments; (3) counsel was ineffective for (a) failing to call three particular witnesses, (b) failing to obtain Petitioner's school and work records, (c) failing to object to text message evidence, and (d) failing to object during the prosecution's closing argument; and (4) the trial court erred by denying Petitioner's request for a jury instruction on the lesser offense of entering without permission. (ECF No. 14-12, PageID.997.) Petitioner also filed a Standard 4 brief, asserting that the trial court erred by failing to instruct the jury regarding specific intent and that counsel was ineffective for failing to request such an instruction. (*Id.*, PageID.922.) On May 14, 2019, the court of appeals affirmed Petitioner's conviction and sentence. *Harvey*, 2019 WL 2111967, at *1. On December 23, 2019, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Harvey*, 936 N.W.2d 297 (Mich. 2019).

Petitioner returned to the trial court to file a motion for relief from judgment pursuant to Michigan Court Rule 6.500. (ECF No. 14-10, PageID.806–847.) In that motion, Petitioner asserted that retained trial and appellate counsel rendered ineffective assistance in various ways. (*Id.*, PageID.807–808.) The trial court denied Petitioner's motion in an order entered on March 29, 2021. (ECF No. 14-11.) On September 9, 2021, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal. (ECF No. 14-13, PageID.1171.) Petitioner did not seek leave to appeal to the Michigan Supreme Court. This § 2254 petition followed.

4

## II.        AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.  Ground I—Directed Verdict and Sufficiency of the Evidence

As his first ground for relief, Petitioner contends that the trial court erred in failing to enter a directed verdict of acquittal because the prosecution presented insufficient evidence regarding intent. (ECF No. 1, PageID.15.) The court of appeals rejected Petitioner's argument, first applying the following standard for reviewing Petitioner's claim.

> "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v. Aldrich*, 246 Mich. App. 101, 122; 631 N.W.2d 67 (2001). Larceny is a specific intent crime. *See People v. Cain*, 238 Mich. App. 95, 120; 605 N.W.2d 28 (1999). The trier of fact may infer a defendant's intent from circumstantial evidence, including the defendant's words or conduct. *People v. Hawkins*, 245 Mich. App. 439, 458; 628 N.W.2d 105 (2001). "[C]ircumstantial

7

evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. McKinney*, 258 Mich. App. 157, 165; 670 N.W.2d 254 (2003) (quotation marks and citation omitted; alteration in original).

*Harvey*, 2019 WL 2111967, at *1. Although the court of appeals cited state authority, the standard applied is identical to the constitutional "sufficiency of the evidence" standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires the court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.[3]

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly

---

[3] It is possible that the denial of a directed verdict may implicate only state law issues. For example, if the defendant contends the trial court erred in identifying the essential elements of the crime or available defenses. *See, e.g.*, *Al-Maqablh v. Temple*, No. 20-5435, 2021 WL 1733480, at *4 (6th Cir. Mar. 4, 2021). Here, however, that was not the nature of Petitioner's challenge. After the prosecution rested, Petitioner, through counsel, moved for a directed verdict on the basis that the prosecution had not "proven intent to steal or to commit a larceny in this case." (Trial Tr. II, ECF No. 14-7, PageID.745.) Nonetheless, to the extent Petitioner contends that the court of appeals erred in rejecting his directed verdict challenge as a matter of state law, he is not entitled to relief. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68.

be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams v. Taylor*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of regarding Petitioner's sufficiency of the evidence challenge is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution,

with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Here, the court of appeals followed *Jackson*'s command and considered the evidence in a light that favored the prosecution against the element of intent:

> We recognize that [Petitioner's] explanation for his actions has been consistent, and the cell phone found inside the home is further consistent with that explanation. However, the jury was not obligated to accept [Petitioner's] explanation. *See People v. Howard*, 50 Mich. 239, 242–243; 15 N.W. 101 (1883); *People v. Palmer*, 392 Mich. 370, 375–377; 220 N.W.2d 393 (1974). The cell phone's presence in the home, although consistent with [Petitioner's] theory of the case, is not necessarily proof. The jury was able to evaluate [Petitioner's] demeanor and credibility, and absent exceptional circumstances, we may not intrude upon that assessment or upon the jury's role in determining the weight and inferences to be given the evidence. *People v. Blevins*, 314 Mich. App. 339, 357; 886 N.W.2d 456 (2016). The jury is only prohibited from speculating. *See People v. Bailey*, 451 Mich. 657, 673–675, 681-682; 549 N.W.2d 325 (1996). The homeowner discovered [Petitioner] halfway inside a broken basement window at approximately 2:30 a.m., following which [Petitioner] rapidly departed from the scene. When this evidence is viewed in the light most favorable to the prosecution, the trier of fact could reasonably have inferred beyond a reasonable doubt that [Petitioner] intended to commit a larceny inside the residence. Therefore, the trial court did not err in denying [Petitioner's] motion for a directed verdict.

*Harvey*, 2019 WL 2111967, at *2.

Petitioner does not challenge the recitation of record evidence offered by the court of appeals. Instead, the entire crux of Petitioner's argument regarding the failure to grant a motion

for a directed verdict and the sufficiency of the evidence is that the "prosecution presented nothing to establish [Petitioner] had the intent to commit larceny[,] only that he entered the home to retriev[e] his cell phone." (Pet., ECF No. 1, PageID.16.) However, the homeowner testified that he found Petitioner halfway inside the broken window, and that Petitioner rapidly departed. (Trial Tr. II, ECF No. 14-7, PageID.12–13.) Notably, Petitioner's phone was still on the basement floor. (*Id.*, PageID.13.) The homeowner also testified that there were "sprinkles of blood" and broken ceiling tiles scattered around the basement floor. (*Id.*, PageID.13–14.) Although Petitioner had not yet testified when the trial court denied his motion for a directed verdict, Petitioner essentially invites this Court to reweigh the credibility of the witnesses presented by the prosecution and resolve all conflicts and inferences in his favor. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are rational. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Indeed, the Supreme Court's principal guidance regarding the boundaries of reasonable inference is a case regarding inferring intent from the circumstances. *Coleman v. Johnson*, 566 U.S. 650 (2012) (concluding that an inference from circumstantial evidence is reasonable so long as it is not "so insupportable as to fall below the threshold of bare rationality."). The jury's assessment here, and the appellate court's analysis of that assessment, do not fall below the threshold of bare rationality. Therefore, the finding of the necessary criminal intent is not an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief with respect to this portion of habeas ground I.

### B.      Grounds I and III—Jury Instruction Issues

As part of his first ground for relief, Petitioner argues that the trial court violated his due process rights by failing to instruct the jury on specific intent. (Pet., ECF No. 1, PageID.15.) In

ground III, Petitioner faults the trial court for denying his request to instruct the jury on the lesser offense of entering without permission. (*Id.*)

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). Typically, a claim that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 155; *see also Estelle*, 502 U.S. at 75 (concluding that erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Estelle*, 502 U.S. at 75. With this standard in mind, the Court considers each of Petitioner's arguments regarding jury instructions below.

### 1.      Specific Intent

One way in which a jury instruction might run afoul of the due process guarantee is if the instruction is ambiguous such that "'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that relieves the State of its burden of proof on every element." *Herring v. Lazaroff*, 843 F. App'x 724, 728 (6th Cir. 2021) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). That is essentially what Petitioner claimed when Petitioner argued that the trial

court's failure to read the specific intent instruction denied him due process. The court of appeals

rejected the claim, stating:

> Next, in his Standard 4 brief, [Petitioner] argues that the trial court erred in failing
> to instruct the jury on "specific intent." We disagree. The trial court properly
> instructed the jury as to the elements of first-degree home invasion in accord with
> MCL 750.110a(2). Contrary to [Petitioner's] assertion, the trial court defined
> "larceny" for the jury. The trial court also instructed the jury on direct and
> circumstantial evidence, the presumption of innocence, and the burden of proof.
> The trial court's instructions "fairly presented the issues to be tried and sufficiently
> protected the defendant's rights." *Aldrich*, 246 Mich. App. at 124.
>
> [Petitioner] cites language the trial court used in denying his motion for a directed
> verdict to argue that the trial court committed instructional error. However, this was
> not instructional error. Rather, the trial court properly cited evidence in denying
> [Petitioner's] motion for a directed verdict outside the presence of the jury. To the
> extent [Petitioner] argues that there was insufficient evidence to allow the jury to
> infer that he had intent to commit a larceny, as discussed earlier, the trial court did
> not err in denying the motion for a directed verdict.

*Harvey*, 2019 WL 2111967, at *7.

Petitioner merely repeats the argument he raised in the court of appeals. Upon review of

the record, the Court concludes that—for the very reasons identified by the court of appeals—there

is nothing to suggest that the jury instructions with which Petitioner takes issue resulted in a trial

so unfair that it denied Petitioner due process. A review of the record indicates that the trial court

instructed the jury that the third element of first-degree home invasion required a finding that

Petitioner broke into and entered the dwelling with the "intent[] to commit a larceny," and that a

larceny "is the taking and moving of someone else's property without consent with the intent to

permanently deprive the owner of the property." (Trial Tr. II, ECF No. 14-7, PageID.762.)[4] There

---

[4] Moreover, to the extent Petitioner contends that the trial court should have provided an instruction
defining specific intent, the Michigan Supreme Court, in 2004, concluded that "it is unnecessary
for the jury to be given further instruction on 'specific intent,' such as that found in CJI2d 3.9."
*People v. Maynor*, 683 N.W.2d 565, 568–69 (Mich. 2004). In response to *Maynor*, the Michigan
Supreme Court Committee on Model Jury Instructions deleted the specific intent model instruction
in May of 2005. *See generally* Mich. Crim. JI 3.9.

is no likelihood—and therefore certainly no reasonable likelihood—that the jury would find Petitioner guilty of the offense without finding that Petitioner had the intent to commit a larceny. Indeed, there is no ambiguity with regard to the intent instruction. Petitioner, therefore, has failed to demonstrate that the court of appeals' determination regarding the trial court's alleged failure to instruct on specific intent was contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to this portion of habeas ground I.

### 2. Entering Without Permission

Petitioner, through counsel, raised on direct appeal his argument regarding the failure of the trial court to provide an "entering without permission" instruction, and the court of appeals rejected it, stating:

> "Jury instructions must clearly present the case and the applicable law to the jury." *People v McGhee*, 268 Mich. App. 600, 606; 709 N.W.2d 595 (2005). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *Id.* "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich. 335, 357; 646 N.W.2d 127 (2002). . . . .

> The trial court instructed the jury on first-degree home invasion and the lesser-included offense of third-degree home invasion. The relevant elements of first-degree home invasion are that (1) the defendant breaks and enters a dwelling, (2) while intending to commit a larceny, and (3) another person is lawfully present in that dwelling. *People v. Wilder*, 485 Mich. 35, 43; 780 N.W.2d 265 (2010). The relevant elements of third-degree home invasion are that (1) the defendant breaks and enters a dwelling; and (2) while intending to commit a misdemeanor in the dwelling *or* actually commits a misdemeanor while entering, present in, or exiting the dwelling. *Id.* at 43-44. The relevant elements of breaking and entering without permission are that (1) the defendant broke and entered a building, (2) without permission from the owner. *Cornell*, 466 Mich. at 361. Malicious destruction of property requires "intent to injure or destroy the property." *People v. Culp*, 108 Mich. App. 452, 458; 310 N.W.2d 421 (1981).

> There is no dispute that [Petitioner] broke and entered a dwelling. There is also no dispute that [Petitioner] intentionally kicked the window out of its frame to do so.

Thus, the uncontroverted evidence establishes that, by [Petitioner's] own admission, he intentionally damaged part of the house while breaking and entering. In other words, [Petitioner] admitted to breaking and entering a dwelling, committing malicious destruction, with intent to damage or destroy the property. Although breaking and entering without permission is a necessarily included lesser offense, [Petitioner's] admission to third-degree home invasion rendered an instruction on the lesser offense unsupported by a rational view of the evidence. See *Cornell*, 466 Mich. at 357.

Moreover, even if the trial court erred in failing to instruct the jury on entering without permission, [Petitioner] is not entitled to relief. In this case, the jury was instructed on both first-degree and third-degree home invasion. The jury convicted [Petitioner] of first-degree home invasion, the greater offense. Because the jury did not acquit [Petitioner] or convict him of the lesser offense, [Petitioner] has not established that the trial court's failure to instruct on entering without permission amounted to a miscarriage of justice. See *People v. Gillis*, 474 Mich. 105, 140 n. 18; 712 N.W.2d 419 (2006). We do not find the jury instructions to be "outside the range of reasonable and principled outcomes." See *Unger*, 278 Mich. App. at 217.

*Harvey*, 2019 WL 2111967, at *6–7 (footnote omitted).

In his § 2254 petition, Petitioner contends that he was prejudiced by the trial court's failure to instruct the jury on "entering without permission" because "the option of a lesser included offense could have shifted the jury's understanding that there was a[n] offense lower than third degree home invasion." (Pet., ECF No. 1, PageID.25.) According to Petitioner, the jury could have found, from the evidence provided, that Petitioner "accidentally broke the window when he threw his phone at the wall. They could also determine that he did not intend to harm the ceiling tiles when he entered the window feet first going into the basement." (*Id.*)

However, Petitioner's identification of a set of facts that might support a verdict of guilty on a charge of entering without permission ignores the substance of his own testimony. Petitioner testified that when he was standing near the residence to relieve himself, he was "kind of lightly tapping [his] phone up against the house, like trying to jolt it back to life, like to work." (Trial Tr. II, ECF No. 14-7, PageID.747.) Petitioner then "got mad at [his] phone and [he] chucked it, like just threw it up against the lower part of their house." (*Id.*) He then immediately heard the sound

of breaking glass and saw that the window was broken. (*Id.*) Petitioner admitted that he kicked in the window to remove the remaining glass so that he could go into the basement to retrieve his phone. (*Id.*, PageID.748.) Given that testimony, the court of appeals reasonably concluded that Petitioner essentially admitted to committing third-degree home invasion, since he destroyed the rest of the window to enter the residence. Petitioner, therefore, conceded that he committed a *greater* offense than "entering without permission."

In light of Petitioner's concession, clearly established federal law forecloses his claim. In *Hopper v. Evans*, 456 U.S. 605 (1982), the Supreme Court rejected an argument that closely parallels the argument Petitioner raises here. In *Hopper*, the Court explained the limits of due process with regard to lesser included offense instructions as follows:

> *Beck* [*v. Alabam*a, 447 U.S. 625 (1980),] held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence. Under Alabama law, the rule in noncapital cases is that a lesser included offense instruction should be given if "there is any reasonable theory from the evidence which would support the position." *Fulghum v. State*, 291 Ala. 71, 75, 277 So.2d 886, 890 (1973). The federal rule is that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S. Ct. 1993, 1995, 36 L. Ed. 2d 844 (1973).

456 U.S. at 611–12 (emphasis in original). That general rule is the very rule applied by the court of appeals in Petitioner's case. *Harvey*, 2019 WL 2111967, at *6 (stating "'[A] requested instruction on a necessarily included lesser offense is proper if . . . a rational view of the evidence would support it.'").

But in *Hopper*, the Supreme Court considered not just the general rule, but the specific circumstance where the defendant's own testimony supported conviction of the greater offense.

The Court noted that conviction on the lesser offense was "contradicted by [Hopper's] own testimony at trial." 456 U.S. at 613. Thus, the Court explained:

> It would be an extraordinary perversion of the law to say that intent to kill is not established when a felon, engaged in an armed robbery, admits to shooting his victim in the back in the circumstances shown here. The evidence not only supported the claim that respondent intended to kill the victim, but affirmatively negated any claim that he did not intend to kill the victim. An instruction on the offense of unintentional killing during this robbery was therefore not warranted.

*Id*. Likewise, it would be a perversion of the law to instruct on "entering without permission" when the evidence—even Petitioner's own testimony—compels the conclusion that he has committed the greater offense. The court of appeals' determination, therefore, is entirely consistent with *Hopper* and precludes the conclusion that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### C.     Ground IV—Prosecutorial Misconduct

As his fourth ground for relief, Petitioner contends that the prosecution committed misconduct by "shift[ing] the burden of proof to [Petitioner] during closing argument and misstat[ing] the evidence to mislead the jury." (Pet., ECF No. 1, PageID.15.)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–

17

12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

### 1. Burden Shifting

Petitioner first suggests that the prosecution engaged in improper burden shifting during closing arguments. (Pet., ECF No. 1, PageID.22.) According to Petitioner, this "deplorable decision" undermined the credibility of the jury's verdict. (*Id.*)

The court of appeals rejected Petitioner's claim, stating:

[Petitioner] argues that the prosecutor improperly shifted the burden of proof and improperly commented on his failure to corroborate his testimony. Specifically, [Petitioner] complains of the following statement by the prosecutor during rebuttal closing:

One of the other things the Judge is going to tell you is all in all how reasonable, how reasonable does the witness's testimony seem when you think about all the other evidence in the case. And I would submit to you that you should consider the evidence that you haven't heard.

18

[Defendant] and [defense counsel] have no burden to prove anything to you, but I think I counted four other witnesses that could corroborate [defendant] that he admits only he knows of. Today is the first time we've heard this defense, four others, right? A friend from work, a nephew, and . . . three females. Not one of them named. The address, the apartment number not given. In fact, there's not even a name in the contacts for the phone.

It is improper for the prosecutor to comment on [Petitioner's] failure to call additional witnesses other than himself. *See People v. Fyda*, 288 Mich. App. 446, 463–464; 793 N.W.2d 712 (2010). However, it is not improper for the prosecutor to attack a defendant's credibility, and commenting on weaknesses in the defense does not shift the burden of proof. *People v. Fields*, 450 Mich. 94, 107, 110; 538 N.W.2d 356 (1995). We do not find it improper to comment on an apparent discrepancy between what [Petitioner's] testimony indicates he could provide as evidence, and what [Petitioner] has actually produced as evidence. "[A]rgument regarding the absence of a witness, who is injected into the case by one of the parties, illustrates the lack of believability of the events in question." *Id.* at 107–108.

Furthermore, even if we were to conclude that the prosecutor's brief remark was improper, which we do not, [Petitioner's] physical acts were largely undisputed, and the absence of corroborative witness testimony was not critical to evaluating the core issue of whether [Petitioner] had any larcenous intent. Moreover, the trial court instructed the jury regarding the presumption of innocence and the appropriate burden of proof. The trial court also instructed the jury regarding what it should consider as evidence and instructed the jury that the statements of the attorneys did not amount to evidence. "It is well established that jurors are presumed to follow their instructions." *People v. Graves*, 458 Mich. 476, 486; 581 N.W.2d 229 (1998). We conclude that the trial court's instruction cured any possible impropriety in the prosecution's reference to [Petitioner's] failure to call witnesses. See *Unger*, 278 Mich. App. at 235.

*Harvey*, 2019 WL 2111967, at *2.

In his § 2254 petition, Petitioner argues that the court of appeals referred to the wrong statements, and that he takes issue with the following statements made by the prosecutor during closing arguments:

So what's at issue? This thing right here. Intended to commit larceny. First of all, I could say what else would really be the intent here? Only if you believe that this phone was accidentally thrown through this window, and that was the only reason he decided to enter the home, should you find him not guilty of home invasion in the first degree, because he didn't intend to steal anything, but only remove his phone. And again I'll address why that's unbelievable here in a few minutes.

19

(Trial Tr. II, ECF No. 14-7, PageID.756.) According to Petitioner, the prosecutor "told the jury that the proof of intent must come from the defendant, and placed the burden of proving that intent on the defendant's shoulders by stating that his story is not believable on [its] face." (Pet., ECF No. 1, PageID.22.)

Contrary to Petitioner's argument, the court of appeals did consider the statement cited above with respect to Petitioner's assertion that the "the prosecutor made improper statements during closing arguments regarding proof of intent." *Harvey*, 2019 WL 2111967, at *3. The court of appeals rejected Petitioner's argument, noting that the statement constituted a "completely accurate summary of [Petitioner's] theory of the case." *Id.* at *4. Although the court of appeals appears to have addressed this statement as part of Petitioner's challenge that the prosecution misstated the evidence, the fact remains that it was, contrary to Petitioner's assertion, considered.

Upon review of the statements challenged by Petitioner—both those addressed by the court of appeals and those Petitioner indicates the court of appeals should have addressed further—the Court cannot conclude that the court of appeals' rejection of this assertion of prosecutorial misconduct is contrary to, or an unreasonable application of, clearly established federal law.

At no point did the prosecution indicate that the burden was on Petitioner to prove intent. Rather, the prosecution commented on the evidence before the Court and suggested that, with respect to intent, Petitioner's testimony should not be deemed credible. Moreover, during rebuttal argument, the prosecution explicitly stated that "it's my burden." (Trial Tr. II, ECF No. 14-7, PageID.759.) Furthermore, the trial court instructed the jury that the "lawyers' statements and arguments are not evidence," and that the burden of proof fell on the prosecution. (*Id.*, PageID.761.) The court of appeals' determination that jurors are presumed to follow their instructions is entirely consistent with clearly established federal law. *See Weeks v. Angelone*, 528

20

U.S. 225, 234 (2000) (noting that "[a] jury is presumed to follow its instructions"). Petitioner has not demonstrated that any comments by the prosecutor during closing arguments improperly shifted the burden of proof and "so infected the trial with unfairness" that Petitioner was denied due process. Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### 2.  Misstating Evidence

Next, Petitioner faults the prosecution for misstating evidence during closing arguments. (Pet., ECF No. 1, PageID.22.) According to Petitioner, the prosecution made several statements that "testif[ied] about evidence and facts that weren't true." (*Id.*, PageID.23.)

The court of appeals rejected Petitioner's claim, stating:

> [Petitioner] next argues that the prosecutor misstated the evidence when he referred to damaged and bloodied ceiling tiles discovered just inside the basement window, and a bloody footprint found on an air hockey table located near the window. We disagree. [Petitioner's] contention is not that the prosecutor invented evidence outright, but rather exaggerated. Although the "prosecutor may not make a factual statement to the jury that is not supported by the evidence," the prosecutor may make reasonable inferences "and need not confine argument to the blandest possible terms." *People v. Dobek*, 274 Mich. App. 58, 66; 732 N.W.2d 546 (2007).

> We presume [Petitioner] refers to the following remarks during initial closing:

> To suggest that he didn't get all the way in yet or something I submit to you would be ludicrous because how else do his footprints get all over the top of the hockey table? If he hasn't gone into that home, stood on the hockey table, and ripped down those ceiling tiles looking for whatever it was he was looking for, how did his footprints get on top of the hockey table? And if he was that far into the home, why didn't he pick up the phone and get out. He didn't do that, ladies and gentleman, because he was looking for something to steal, and when he couldn't find it, he decided it was finally time to leave, and that's when [the homeowner] came and found him. That's how you know that his intent was not an innocent one. He would have gotten the one thing that he went in there for; not to do a bunch of damage to these folks' ceiling, not to just stomp around on top of an air hockey table.

> [Petitioner] points out that there was only evidence of *one* footprint and no evidence of footprints elsewhere in the basement. The prosecutor did not say there were footprints anywhere else. However, there was evidence that [Petitioner] was injured

and bleeding. There was also testimony from a police officer that "bloody footprints" were present on the hockey table, part of the drop tile ceiling in the basement was lying on the floor, and there was blood on those tiles. We cannot conclude that the prosecutor misrepresented *or* exaggerated the evidence.[] Furthermore, the trial court instructed the jury that the statements of the attorneys did not constitute evidence, and the jury was provided with a photograph of the top of the hockey table, so it could draw its own conclusions.

*Harvey*, 2019 WL 2111967, at *3

According to Petitioner, the "actual photo of the bloody print was an inch an[d] a half in diameter." (Pet., ECF No. 1, PageID.24.) He faults the prosecutor for "knowingly turn[ing] that small print into several bloody footprints all over the air hockey table." (*Id.*) Petitioner suggests that the prosecution made up this evidence "as a desperate attempt to prove that [Petitioner] possessed the intent to commit larceny as a last ditch effort because he had no other way to show intent." (*Id.*)

Petitioner merely repeats the arguments he raised to the court of appeals and does not explain how the court of appeals' rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law. In any event, even if the prosecution mistakenly referred to multiple footprints instead of just one, Petitioner has not demonstrated that the comment "so infected the trial with unfairness" that Petitioner was denied due process. As the court of appeals noted, the jury was instructed that closing arguments are not evidence, and the jury is presumed to follow its instructions. *See Weeks*, 528 U.S. at 234.

In sum, Petitioner has failed to demonstrate that the trial court's rejection of his prosecutorial misconduct claims is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground IV.

22

### D.    Grounds II and V—Ineffective Assistance of Pretrial, Trial, and Appellate Counsel

As his second ground for relief, Petitioner contends that trial counsel rendered ineffective assistance in numerous ways. (Pet., ECF No. 1, PageID.15.) Specifically, Petitioner faults counsel for: (1) failing to call corroborative witnesses; (2) failing to present evidence that would have bolstered Petitioner's testimony; (3) failing to object to the prosecution's closing argument shifting the burden of proof; (4) failing to challenge the admission of illegally seized text messages; and (5) failing to request specific intent jury instructions.

Petitioner raises several more ineffective assistance of counsel claims in habeas ground V. In this ground, Petitioner primarily takes issue with the counsel he retained during pretrial proceedings, as well as appellate counsel. Petitioner asserts that retained counsel Baynton made threats to the three women who Petitioner was with on the night of the incident. (Pet., ECF No. 1, PageID.26.) Petitioner asserts further that Baynton "ill-advised" Petitioner to waive his preliminary hearing. (*Id.*) Petitioner contends that he did not want to waive the hearing, but that Baynton told him that "he wouldn't get the plea for 3rd degree home invasion and that the prosecution [would] no longer want to negotiate if he went through with the examination." (*Id.*) Petitioner argues that Baynton was "withholding exculpatory evidence" in the form of the "arresting officer's affidavit of probable cause." (*Id.*) According to Petitioner, that affidavit was full of false statements. (*Id.*) Petitioner argues further that had he known about the affidavit, he would never have waived his preliminary examination. (*Id.*, PageID.27.)

Petitioner goes on to suggest that Baynton failed to share the prosecution's discovery with him prior to the status conference. (*Id.*) On the day of the status conference, Baynton conveyed the prosecution's plea deal, which was for 71 months to 20 years, to Petitioner. (*Id.*) Petitioner asked "what happened to him getting a plea to 3rd degree home invasion and [Baynton] said that was not

23

going to happen." (*Id.*) Shortly thereafter, Baynton withdrew as counsel when Petitioner "decided to take his case to trial." (*Id.*)

Petitioner then focuses on counsel who was appointed to represent him. Petitioner reiterates that counsel failed to call the three witnesses to testify for him, failed to present school and work records, and failed to file a motion to suppress "illegally obtained text messages." (*Id.*, PageID.28.) Petitioner claims that prior to trial, counsel told him that the three women were not needed as witnesses because they had a copy of the video jail visit between Petitioner and the women. (*Id.*) Petitioner claims that counsel never told him that video was not admissible because it would be deemed hearsay. (*Id.*) Petitioner claims he chose to testify with the understanding that counsel would be presenting witnesses and the video, and that he would have never taken the stand had he known that "he would have no additional evidence or witnesses of any kind to corroborate his testimony." (*Id.*)

Petitioner next turns to his assertions of ineffectiveness against appellate counsel. Petitioner faults appellate counsel for failing to request that the copy of the jail visit be played at Petitioner's *Ginther* hearing. (*Id.*) Petitioner suggests that the recording should have been played to counter trial counsel's assertion that none of the three women admitted to sending Petitioner the text message discussed above. (*Id.*) Petitioner contends that appellate counsel's failure to reveal that one of the women admitted to sending the text message "cost[] him a new trial." (*Id.*, PageID.29.) Petitioner also faults appellate counsel for failing to address at the *Ginther* hearing trial counsel's failure to move to suppress the text messages. (*Id.*, PageID.30.) He also contends that appellate counsel should have raised the claims of ineffective assistance regarding Baynton set forth above. (*Id.*)

24

### 1.     Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The [Petitioner] bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the [Petitioner] is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme

Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

### 2.     Claims Raised in Habeas Ground II

Petitioner raised the five ineffective assistance of trial counsel claims set forth in habeas ground II on direct appeal. The court of appeals addressed them under the following standard:

> To establish ineffective assistance of counsel, a defendant must show that (1) counsel rendered assistance that "fell below the objective standard of reasonableness" under the prevailing professional norms, and (2) that there is a "reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." *People v. Toma*, 462 Mich. 281, 302-303; 613 N.W.2d 694 (2000) (quotation marks and citation omitted; ellipsis in original). "A reasonable probability is a probability sufficient to undermine

26

> confidence in the outcome." *People v. Carbin*, 463 Mich. 590, 600; 623 N.W.2d
> 884 (2001) (quotation marks and citation omitted). "Because the defendant
> bears the burden of demonstrating both deficient performance and prejudice, the
> defendant necessarily bears the burden of establishing the factual predicate for his
> claim." *Id.* "Whether a person has been denied effective assistance of counsel is a
> mixed question of fact and constitutional law." *People v. LeBlanc*, 465 Mich. 575,
> 579; 640 N.W.2d 246 (2002).

*Harvey*, 2019 WL 2111967, at *4. Although the trial court cited state court authority for the

standard, the standard applied is identical to *Strickland*. Moreover, in *Toma*, the supreme court

identified *Strickland* as the source of the standard. *Toma*, 613 N.W.2d at 703. Thus, there is no

question that the court of appeals applied the correct standard. As explained above, the state court's

application of the correct standard eliminates the possibility that the resulting decision is "contrary

to" clearly established federal law. Petitioner can only overcome the deference afforded state court

decisions if the determinations regarding Petitioner's ineffective assistance claims are

unreasonable applications of *Strickland* or if the state court's resolutions were based on

unreasonable determinations of the facts. 28 U.S.C. 2254(d). The Court, therefore, will consider

whether the court of appeals reasonably applied the standard for Petitioner's claims of ineffective

assistance.

### a. Failure to Object to Closing Argument and Request Jury Instruction

As noted above, Petitioner faults trial counsel for not objecting to the prosecution's attempt

to shift the burden of proof during closing arguments and for not requesting jury instructions

regarding specific intent. The court of appeals summarily rejected these claims, noting that they

were meritless because the prosecution did not speak erroneously and because the trial court did

not err in instructing the jury. *See Harvey*, 2019 WL 2111967, at *6, 7 (citing *People v. Ericksen*,

793 N.W.2d 120 (Mich. 2010)). For the reasons set forth above, as a matter of federal constitutional

law, the Court has agreed with the court of appeals that no prosecutorial misconduct occurred and

27

that the trial court did not err by failing to provide any further instructions regarding specific intent. To the extent either of these claims is based on some parallel state law error, this Court is bound by the state appellate court's conclusion that no error occurred. *See, e.g., Bradshaw*, 546 U.S. at 76 (stating "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")

Whether the underlying claims are meritless as a matter of federal constitutional law or state law, "omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Accordingly, Petitioner has not demonstrated that the court of appeals' rejection of these claims of ineffective assistance was contrary to, or an unreasonable application of, *Strickland*, and he is not entitled to relief with respect to these claims.

### b.    Failure to Call Witnesses

Petitioner also faults counsel for failing to call three witnesses to testify on Petitioner's behalf. Specifically, Petitioner refers to the three women whom he testified he was with in an apartment near the residence on the evening of the incident.

The court of appeals rejected Petitioner's claim, stating:

> In this case, trial counsel made a strategic decision not to contact or call the three women who were with [Petitioner] immediately before the home invasion. At the *Ginther* hearing, trial counsel testified he was aware that [Petitioner] was prepared to testify that he was at a party with three women and that he then proceeded to throw his cell phone through the window of the home. Trial counsel testified that he did not attempt to contact the women "for a number of reasons." Trial counsel agreed that the women could have supported that [Petitioner] was not roaming the neighborhood, but trial counsel stated that fact was not "really disputed." Trial counsel reviewed a jail recording of a meeting between [Petitioner] and the three women. After reviewing the recording, trial counsel decided that the women could not help the defense. This testimony shows that trial counsel considered the witnesses and made a strategic decision not to contact them or call them at trial. This did not amount to deficient performance. See *Russell*, 297 Mich. App. at 716.

*Harvey*, 2019 WL 2111967, at *5.

Petitioner suggests that one of the three witnesses would have admitted to sending the text message discussed below. (Pet., ECF No. 1, PageID.19.) The court of appeals properly noted that, at the *Ginther* hearing, trial counsel testified that Petitioner had told him about the three women. (ECF No. 14-9, PageID.782.) Counsel admitted that they could have testified that Petitioner came to their apartment and was not "just roaming the neighborhood," but that such a fact was not "really disputed." (*Id.*, PageID.782.) He admitted that the women could have testified that Petitioner was "highly intoxicated." (*Id.*) Counsel also testified that he had reviewed the recording of a jail visit between Petitioner and the women. (*Id.*, PageID.784.) According to counsel, the recording indicated that the women had talked to Petitioner's prior counsel, which got "rather acrimonious." (*Id.*, PageID.789.) Moreover, the women "ma[de] accusations against each other." (*Id.*) Counsel also testified that during that recording, the women denied sending the text in question. (*Id.*, PageID.790.) Overall, counsel believed that the women would not "add to the case" in terms of Petitioner's defense theory, particularly because they denied sending the text and because the facts that Petitioner was under the influence and was not roaming the neighborhood were not disputed. (*Id.*, PageID.792.)

Petitioner has failed to offer any evidence, much less clear and convincing evidence, to overcome the presumption that the court of appeals' factual determinations are correct. His speculative claim does not entitle him to habeas relief because, notably, he fails to indicate that the women would have been available to testify at trial and to detail what, specifically, they would have testified. *See Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007) (rejecting an ineffective assistance claim for the petitioner's failure to provide a "basis on which to conclude that failure to call a possibly favorable witness amounts to constitutionally deficient performance"). Thus,

Petitioner has failed to show this Court, as he failed to show the court of appeals, that counsel's failure to call the three women as witnesses rose to the level of deficient performance or that the failure prejudiced Petitioner in any way. In short, Petitioner has not shown that the court of appeals' rejection of this ineffective assistance claim was contrary to, or an unreasonable application of, *Strickland*, and he is not entitled to habeas relief on this claim.

### c.      Failure to Introduce Bolstering Evidence

Next, Petitioner faults trial counsel for failing to introduce evidence to bolster Petitioner's testimony. Specifically, Petitioner avers that counsel should have introduced Petitioner's work and school records to further demonstrate that Petitioner lacked the intent to commit larceny. (Pet., ECF No. 1, PageID.19–20.)

The court of appeals disagreed with Petitioner, stating:

> As noted, decisions regarding the presentation of evidence or witnesses are presumed to be strategic, and we will not substitute our judgment after the fact for that of trial counsel at the time. *People v. Rockey*, 237 Mich. App. 74, 76–77; 601 N.W.2d 887 (1999). At the *Ginther* hearing, trial counsel testified that he did not attempt to obtain the records because he did not think that they were admissible at trial. Counsel emphasized that he had, in fact, previously attempted to introduce evidence of school or work records on behalf of another criminal defendant *before the same trial judge*, only to be "sternly told to move on." We note that if this is accurate, the trial court might have erred at the hearing to which counsel referred. Evidence of a defendant's finances is only *generally* minimally probative yet unacceptably prejudicial, and there is absolutely no per-se bar to its admission, especially where the defense seeks exoneration. *People v. Henderson*, 408 Mich. 56, 62–68; 289 N.W.2d 376 (1980). Nonetheless, we are unable to find it an unstrategic decision to refrain from seeking an apparent exercise in futility, especially because there was no dispute that [Petitioner] had money, schooling, and employment. Even if the records might have been helpful to [Petitioner's] case, they would have been cumulative of a fact in evidence and not in dispute. In light of counsel's experience attempting a similar gambit before the same judge, we are unpersuaded that trial counsel was deficient for failing to pursue the records.

*Harvey*, 2019 WL 2111967, at *5.

Petitioner again fails to offer any evidence, much less clear and convincing evidence, to overcome the presumption that the court of appeals' factual determinations are correct. At trial,

Petitioner himself testified that he "had money on [him]" when he was arrested and that he "work[s] every day." (Trial Tr. II, ECF No. 14-7, PageID.748.) Given that Petitioner's employment and the fact that he had money on him when he was arrested were not facts at issue, any admission of Petitioner's work and school records would have been cumulative of Petitioner's testimony. The Supreme Court has held that counsel cannot be ineffective if the evidence that counsel failed to offer "can reasonably be expected to be only cumulative." *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009). Petitioner, therefore, fails to demonstrate that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, *Strickland*, and he is not entitled to relief on this assertion of ineffective assistance.

### d.   Failure to Object to Text Messages

Petitioner next faults counsel for failing to challenge the admission of certain text messages that were found on his phone when he was arrested. (ECF No. 1, PageID.21.) Petitioner contends that the text messages were illegally obtained without a search warrant, and that the prosecution used them "to help prove that [Petitioner] had intent to commit larceny by twisting the meaning of that text to fit [its] own theories." (*Id.*) Petitioner asserts that the text at issue read: "The police is [sic] in the back on there [sic] way to the front, get the f*** out of here." (*Id.*) According to Petitioner, this text had nothing to do with the residence in question and came through on his phone only after he was in police custody. (*Id.*)

In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375. On direct appeal, the court of appeals rejected Petitioner's claim, stating:

31

> [Petitioner] next argues that trial counsel should have challenged the admission of certain text messages that were found on [Petitioner's] cell phone when he was arrested. [Petitioner] concedes that the messages were on his phone and he permitted the police to access the phone, but argues that he never consented to the police *searching* his phone. Presuming there was some impropriety in this confusing distinction, [Petitioner] never articulates how the text messages prejudiced him. We decline to speculate. See *People v. Bean*, 457 Mich. 677, 685 n. 13; 580 N.W.2d 390 (1998). Therefore, we are unable to conclude that the outcome of the proceedings would have been different if counsel had sought to suppress the messages. See *Toma*, 462 Mich. at 302–303.

*Harvey*, 2019 WL 2111967, at *6.

Cell phones are protected by the warrant requirement of the Fourth Amendment. *See, e.g.,* *Riley v. California*, 573 U.S. 373, 401 (2014) (stating "[o]ur holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest.") However, "[c]onsent is an exception to the Fourth Amendment's warrant requirement." *United States v. Lewis*, 81 F.4th 640, 651 (6th Cir. 2023) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Petitioner acknowledges he consented to the Wyoming police accessing the phone. The testimony at trial showed that Petitioner provided the code to access the phone. Although Petitioner told the court of appeals—and now this Court—that his consent was somehow restricted, the court of appeals could not discern the boundary of his consent, and this Court cannot either. Under the circumstances, in light of Petitioner's consent, counsel's decision to forego a Fourth Amendment suppression hearing regarding the phone falls well within the scope of professionally reasonable conduct. Petitioner, therefore, has not shown that the court of appeals' rejection of this asserted instance of ineffective assistance was contrary to, or an unreasonable application of, *Strickland*.

With regard to all of these ineffective assistance of counsel claims, he has failed to overcome the statutory deference afforded to the state court determinations against him. Accordingly, he is not entitled to habeas relief with respect to ground II.

### 3. Claims Raised in Ground V

#### a. Procedural Default

Respondent contends that Ground V is procedurally defaulted because Petitioner "did not present it to every level of the state appellate system." (ECF No. 13, PageID.643.)

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134 138–39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner contends that he raised the issues that are part of habeas ground V as a "new issue" in his application for leave to appeal to the Michigan Supreme Court during his direct appeal. (Pet., ECF No. 1, PageID.4.) Despite this assertion, a review of the record suggests that Petitioner did raise some of the issues that are part of habeas ground V—the portion related to appointed trial counsel's alleged ineffectiveness—in his motion for a *Ginther* hearing and new trial. However, many issues raised as part of ground V—those concerning retained counsel and appellate counsel—were not raised until Petitioner's application for leave to appeal to the

Michigan Supreme Court. As discussed below, that does not constitute fair presentation of those issues for two reasons.

First, it is never a fair presentation of an issue to raise it for the first time on a discretionary level of appeal to the state's highest court. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit has recognized that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals but raises it for the first time on discretionary appeal to the state's highest court. *See, e.g., Hickey v. Hoffner*, 701 F. App'x 422, 425 (6th Cir. 2017); *Olson v. Little*, 604 F. App'x 387, 402–03 (6th Cir. 2015); *Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Granger v. Hurt*, 215 F. App'x 485, 491 (6th Cir. 2007). Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts. Petitioner's application for leave to appeal was denied, and, thus, the issue was not reviewed.

Second, the issue Petitioner raised for the first time in his direct appeal application for leave to appeal to the Michigan Supreme Court did not include all of the issues Petitioner raises by way of habeas ground V. The only new issue raised in the Michigan Supreme Court was the following:

> Defendant's right to effective assistance of appellate counsel was violated when, during a *Ginther* hearing, appellate counsel failed to reveal to the trial court that one of the witnesses on the recording admitted to sending the text message to defendant's phone and forgetting to question trial counsel about his failure to move to suppress illegally obtained text messages prior to trial.

(Pet'r's Appl. for Leave to Appeal, ECF No. 14-14, PageID.1343.) Habeas ground V, however, is far more expansive, as it also asserts claims of ineffective assistance related to Petitioner's retained counsel during pretrial proceedings as well as appointed trial counsel. (Pet., ECF No. 1, PageID.26–30.)

A review of the record indicates that all the ineffective assistance claims that are part of habeas ground V were not fully raised together for the first time until Petitioner's motion for relief

from judgment. (ECF No. 14-10.) Those issues were then presented to the Michigan Court of Appeals by way of Petitioner's application for leave to appeal. (ECF No. 14-13, PageID.1172–1127.) However, that is as far as Petitioner took all of these issues in the state courts, as he did not file an application for leave to appeal the denial of his motion for relief from judgment to the Michigan Supreme Court. Thus, those issues were never fairly presented to all levels of the Michigan courts.

Based on the state court record, therefore, it is apparent that Petitioner has failed to fairly present and exhaust habeas ground V. But, as the Sixth Circuit Court of Appeals has recognized:

> Exhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust*, 17 F.3d at 160.

Petitioner's circumstance, therefore, is similar to the circumstance facing Petitioner Boerckel as described in *O'Sullivan v. Boerckel*:

> Boerckel's amended federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court. There is no dispute that this state court remedy-a petition for leave to appeal to the Illinois Supreme Court-is no longer available to Boerckel; the time for filing such a petition has long passed. *See* Ill. Sup. Ct. Rule 315(b).

*O'Sullivan*, 526 U.S. at 848. The Supreme Court there concluded that "Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims." *Id*.

It is similarly too late for Petitioner to apply to the Michigan Supreme Court for leave to appeal the denial of his motion for relief from judgment. *See* Mich. Ct. R. 7.305(C)(2) (requiring the filing of an application for leave to appeal in a criminal case no later than 56 days after the

Michigan Court of Appeals order or opinion resolving an appeal). Moreover, now that Petitioner's direct appeal is complete, there is only one means of collaterally raising the issues Petitioner failed to raise in the Michigan Supreme Court. Under Michigan law, the only means of collaterally attacking a criminal judgment after the direct appeal is complete is by filing a motion for relief from judgment under Michigan Court Rule 6.500 *et. seq. People v. Watroba*, 483 N.W.2d 441, 442 (Mich. Ct. App. 1992) (stating "Subchapter 6.500 of the Michigan Court Rules establishes the procedures for pursuing postappeal relief from a criminal conviction. The subchapter is the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process."). That subchapter of the Michigan Court Rules, however, does not permit a court to grant relief in every circumstance. For example, the trial court may not grant relief to the defendant if the motion "alleges grounds for relief which were decided against the defendant in a prior appeal or motion for relief from judgment." Mich. Ct. R. 6.508(D)(2). That is the situation in Petitioner's case with regard to habeas ground V. He presented the issues raised in habeas ground V in his motion for relief from judgment and they were decided against him. Thus, the procedural device of a motion for relief from judgment—the only means of collaterally attacking a criminal judgment after a direct appeal is complete—is no longer available to raise the habeas ground V issues. The Court concludes, therefore, that Petitioner's failure to timely present habeas ground V in the Michigan Supreme Court has resulted in a procedural default of those claims.[5]

---

[5] The Sixth Circuit has explained in a different procedural context that Michigan Court Rule 6.502(D)(2) is a "rule of collateral estoppel that will not procedurally default a federal habeas claim." *Valentin v. Tanner*, No. 23-1207, 2023 WL 5748143, at *4 (6th Cir. Sept. 1, 2023); *see also Peoples v. Lafler*, 734 F.3d 503, 511–12 (6th Cir. 2013); *Stokes v. Scutt*, 527 F. App'x 358, 365 (6th Cir. 2013); *Amos v. Renico*, 683 F.3d 720727 (6th Cir. 2012); *Skinner*, 425 F. App'x at 495; *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004) *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010). In those cases, the Sixth Circuit considered whether a trial court's refusal to consider a claim under Mich. Ct. R. 6.508(D)(2) constituted a state procedural default. In the procedural context of Petitioner's case—where the issue is not

Because of the procedural default, Petitioner must establish cause for his failure to present the issues to the Michigan Supreme Court and resulting prejudice or by showing that the Court's consideration is necessary to avoid a miscarriage of justice. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)); *see also Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (noting that the court has "the option . . . to excuse a procedural default and review a defaulted claim on the merits if a petitioner demonstrates '(1) cause for the default and actual prejudice, or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice.'") (quoting *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004)). to excuse Petitioner's failure to present the claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Rust*, 17 F.3d at 160.

To show cause sufficient to excuse a failure to raise all of the claims included in habeas ground V in the Michigan Supreme Court, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *See Gray*, 518 U.S. at 162. Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

---

whether the state has refused to consider a claim because of the petitioner's state procedural default, but whether a remedy is available after the petitioner failed to fairly present an issue to the state courts on direct appeal—the Sixth Circuit has concluded that Rule 6.508(D)(2) renders further remedy in the state courts unavailable such that the procedural default doctrine requires the habeas petitioner to demonstrate cause and prejudice. *See, e.g., Nettles v. Palmer*, No. 17-2322, 2018 WL 2059912, at *1 (6th Cir. Apr. 5, 2018).

Petitioner has not shown cause for not filing an application for leave to appeal the denial of his Rule 6.500 motion to the Michigan Supreme Court. Therefore, prejudice need not be considered. Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence. For all of the reasons set forth in this opinion, he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (quoting *Schlup*, 513 U.S. at 329), *superseded in other part by statute as recognized in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020). Given the rarity of such evidence, the allegation of actual innocence has been summarily rejected in virtually every case. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

The court must determine whether Petitioner has demonstrated actual innocence by clear and convincing evidence, such that his conviction represents a "fundamental miscarriage of justice." *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner does not attempt to introduce new evidence. Rather, he merely attempts to relitigate evidence that was available at the time of trial. Thus, any possible claim of actual innocence that Petitioner might raise has no merit and cannot justify excusing a procedural default.

In short, relief on Petitioner's habeas ground V is foreclosed by his procedural default. Nevertheless, the Court has considered the merits of the various claims raised in habeas ground V below. For the following reasons, Petitioner's claims also lack merit.

**b.      Retained Counsel and Pretrial Proceedings**

Petitioner asserts that retained counsel Baynton made threats to the three women who Petitioner was with on the night of the incident. (Pet., ECF No. 1, PageID.26.) Petitioner asserts

further that Baynton "ill-advised" Petitioner to waive his preliminary hearing. (*Id.*) Petitioner contends that he did not want to waive the hearing, but that Baynton told him that "he wouldn't get the plea for 3rd degree home invasion and that the prosecution [would] no longer want to negotiate if he went through with the examination." (*Id.*) Petitioner argues that Baynton was "withholding exculpatory evidence" in the form of the "arresting officer's affidavit of probable cause." (*Id.*) According to Petitioner, that affidavit was full of false statements. (*Id.*) Petitioner argues further that had he known about the affidavit, he would not have waived his preliminary examination. (*Id.*, PageID.27.)

Petitioner goes on to suggest that Baynton failed to share the prosecution's discovery with him prior to the status conference. (*Id.*) On the day of status conference, Baynton conveyed the prosecution's plea deal, which was for 71 months to 20 years, to Petitioner. (*Id.*) Petitioner asked "what happened to him getting a plea to 3rd degree home invasion and [Baynton] said that was not going to happen." (*Id.*) Shortly thereafter, Baynton withdrew as counsel when Petitioner "decided to take his case to trial." (*Id.*)

### (i)      Threats to Witnesses

Petitioner vaguely faults Baynton for threatening the three women that Petitioner asserts should have been witnesses. Petitioner, however, provides no factual support for this claim, as he fails to detail the nature of these threats. *Cf. Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (rejecting a conclusory ineffective assistance of appellate counsel claim because the petitioner provided no factual support for the claim). Moreover, as thoroughly discussed above, Petitioner was not prejudiced by the fact that these women did not testify at trial because he fails to present evidence to overcome the court of appeals' factual conclusion that they would not have been helpful to Petitioner's defense. While the Court does not condone any suggested threats, Petitioner has simply failed to demonstrate that Baynton was ineffective in this way.

### (ii)   Preliminary Examination

With respect to Petitioner's claim that Baynton advised Petitioner to waive his preliminary hearing so that he could get a plea offer to 3rd degree home invasion, the Court first notes that there is no federal constitutional right to a preliminary hearing. *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Moreover, "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Not having a preliminary examination is not, in and of itself, prejudicial.

Petitioner identifies as the only consequence of not having a preliminary hearing the loss of the opportunity to challenge the veracity of the arresting officer's affidavit of probable cause. As noted above, Petitioner suggests that the affidavit was full of false statements, and that Baynton failed to share that information with Petitioner. Petitioner, however, had every opportunity to confront and test the veracity of the prosecution's evidence at trial. He fails to explain how the lost opportunity to do so had any effect on the jury's verdict. Moreover, as discussed *infra*, Petitioner fails to present any evidence that he would have taken any plea offer. Petitioner, therefore, fails to demonstrate that he was prejudiced in any way by Baynton's advice to waive the preliminary hearing.

### (iii)   Failure to Share Discovery

Petitioner also faults Baynton for failing to share the prosecution's discovery with him prior to a status conference. However, "there is no constitutional duty to share discovery documents with [P]etitioner." *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998). Although Petitioner "ha[d] a constitutional right to participate in the making of certain decisions which are fundamental to his defense," *Johnson v. Duckworth*, 793 F.2d 898, 900 (7th Cir. 1986), the "actual access to the hard copies of the discovery documents" was not fundamental to Petitioner's defense. *Ramsden v. Warden, Me. Dep't of Corr.*, No. 02-138-B-S, 2003 WL 3560312,

at *10 (D. Me. Feb. 14, 2003). Moreover, Petitioner fails to explain, and the Court fails to discern, how Baynton's failure to share discovery with Petitioner prior to a status conference prejudiced his defense in any way. Accordingly, Petitioner is not entitled to relief with respect to this claim of ineffective assistance.

### (iv)    Plea Negotiations

Finally, Petitioner appears to suggest that Baynton was ineffective during plea negotiations by suggesting that Petitioner would not get a plea offer to 3rd degree home invasion if he did not waive his preliminary hearing and by later telling Petitioner that such a plea offer was never going to happen.

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

Any claim regarding Baynton's conduct during plea negotiations is simply vague and conclusory. Petitioner fails to provide any evidence to support his assertion that a plea offer to 3rd degree home invasion was even made by the prosecution. Likewise, Petitioner has not demonstrated that he would have taken a plea offer. Instead, Petitioner explicitly states that he "decided to take his case to trial" and that is when Baynton withdrew from representing Petitioner. (Pet., ECF No. 1, PageID.27.) Petitioner, therefore, fails to show that Baynton rendered ineffective assistance during any purported plea offer process.

### c.  Appointed Trial Counsel

In ground V, Petitioner reiterates his assertions that appointed trial counsel failed to call the three witnesses to testify for him, failed to present school and work records, and failed to file a motion to suppress "illegally obtained text messages." (Pet., ECF No. 1, PageID.28.) For the reasons discussed above, those claims are meritless. Petitioner also faults counsel for not telling him that the video of the jail visit between Petitioner and the three women was not admissible because it would be deemed hearsay. (*Id.*) Petitioner does not explain, and the Court does not discern, how admission of this video would have benefited his defense in any way, particularly given counsel's testimony that none of the women admitted to sending the text message to Petitioner. The record reflects that after Petitioner testified, counsel brought the video to the trial court's attention, and the trial court noted that the video was "clearly hearsay." (Trial Tr. II, ECF No. 14-7, PageID.755.) Given the trial court's conclusion, Petitioner has not demonstrated how he was prejudiced by counsel failing to explain that the video was not admissible. Moreover, Petitioner does not explain, and the Court does not discern, how admission of this video would have benefited his defense in any way, particularly given counsel's testimony that none of the women admitted to sending the text message to Petitioner.

Petitioner also suggests that he chose to testify with the understanding that counsel would be calling additional witnesses and presenting the video, and that he would have never taken the stand had he known that counsel "would have no additional evidence or witnesses of any kind to corroborate [Petitioner's] testimony." (*Id.*)

It is well established that a criminal defendant has the constitutional right to testify in his or her own defense or to refuse to do so. *Rock v. Arkansas*, 483 U.S. 44, 53 (1987). Counsel's role is to advise the defendant about whether to take the stand, but the final decision is left to the defendant. *Id.* at 551; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983). On habeas review, there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009).

The record reflects that after the trial court denied Petitioner's motion for a directed verdict, the trial court then discussed with Petitioner his right to either testify or not testify. (Trial Tr. II, ECF No. 14-7, PageID.745.) Petitioner acknowledged that he had discussed testifying with his attorney, and that he wanted to testify. (*Id.*) By that time, it would have been obvious to Petitioner that the woman were not testifying on his behalf, particularly because Petitioner provides no indication that the women were even present during his trial. Moreover, as noted above, Petitioner fails to demonstrate that counsel was ineffective regarding the failure to have the video of the jail visit admitted. Petitioner, therefore, has simply failed to overcome the presumption that the decision to testify was his own and that he would not have testified had he known that he would be providing the only testimony for the defense. Petitioner, therefore, fails to demonstrate that appointed trial counsel was ineffective in this respect.

### d.    Appellate Counsel

As noted above, Petitioner faults appellate counsel for failing to request that the copy of the jail visit be played at Petitioner's *Ginther* hearing. (Pet., ECF No. 1, PageID.28.) Petitioner suggests that the recording should have been played to counter trial counsel's assertion that none of the three women admitted to sending Petitioner the text message discussed above. (*Id.*) Petitioner contends that appellate counsel's failure to reveal that one of the women admitted to sending the text message "cost[] him a new trial." (*Id.*, PageID.29.) Petitioner also faults appellate counsel for failing to address at the *Ginther* hearing trial counsel's failure to move to suppress the text messages. (*Id.*, PageID.30.) He also contends that appellate counsel should have raised the claims of ineffective assistance regarding Baynton set forth above. (*Id.*)

With respect to appellate counsel's actions at the *Ginther* hearing, Petitioner simply fails to demonstrate prejudice. During the *Ginther* hearing, trial counsel testified that during the jail visit, the three women denied sending the text message in question to Petitioner. (ECF No. 14-9, PageID.790.) Petitioner has failed to offer any evidence to support his self-serving statement that the recording would have established that one of the women did send the text. Moreover, as discussed *supra*, trial counsel was not ineffective for failing to call the three women as witnesses and for not moving to suppress the admission of the text message in question. While appellate counsel did not explicitly question trial counsel about his decision to not file a motion to suppress, as discussed above, Petitioner fails to demonstrate how admission of the text message prejudiced his defense in any way. Petitioner, therefore, is not entitled to habeas relief with respect to his claims of ineffective assistance of appellate counsel during the *Ginther* hearing.

Petitioner also suggests that appellate counsel was ineffective for failing to raise claims regarding Baynton's ineffectiveness during Petitioner's direct appeal proceedings. As thoroughly discussed *supra*, Petitioner's ineffective assistance claims regarding Baynton lack merit.

Accordingly, Petitioner's "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Thus, counsel cannot be deemed ineffective for failing to raise these issues.

In sum, Petitioner has failed to demonstrate that pretrial, trial, and appellate counsel rendered ineffective assistance in the myriad ways Petitioner suggests. Accordingly, Petitioner is not entitled to relief with respect to habeas ground V.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full

merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.


Dated:   October 24, 2023                          /s/ Robert J. Jonker
                                                   Robert J. Jonker
                                                   United States District Judge